UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT DURCSHLAG | ) |
| Plaintiff, | ) Case No. 16-cv-8648 |
| v. | ) Judge Sharon Johnson Coleman |
| UNITED STATES OF AMERICA, CATHERINE LINAWEAVER, BONNIE NOWAKOWSKI, GREG FEARDAY, NDIFE, KRUGER, | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Robert Durchslag, brings this action against the United States of America and individually named defendants Catherine Linaweaver, Bonnie Nowakowski, Greg Fearday, Ndife, and Kruger, asserting claims under the Federal Tort Claims Act, a *Bivens* action, and intentional infliction of emotional distress. The United States now moves this Court to dismiss Durchslag's Federal Tort Claims Act claim, which constitutes the sole count naming the United States as a defendant. For the reasons set forth herein, that motion is granted.

**Background**

The following allegations taken from the plaintiff's amended complaint are accepted as true for the purpose of ruling on this motion. Durschlag was a pre-trial detainee who was in custody at the Metropolitan Correctional Center in Chicago ("MCC") from August 29, 2012 until July 11, 2016. Durchslag suffers from an autoimmune condition that, prior to his arrest, was being treated by the Northwestern Memorial Hospital and Northwestern Medical Group ("Northwestern").

In late 2012, Durchslag began to notice that his vision was deteriorating. On December 10, 2012, Durchslag saw an ophthalmologist at Thorek Hospital regarding his vision. Durchslag was

1

ordered to wear dark tinted glasses at all times in order to prevent continuing damage to his eyes and was ordered to be seen by specialists at Northwestern's Eye Clinic. Following that appointment, however, MCC staff did not provide Durchslag with the requisite glasses or permit him to seek treatment with Northwerstern's Eye Clinic, notwithstanding his complaints to MCC personnel including Nowakowski, Fearday, and Kruger. On February 17, 2013, Durchslag's criminal defense attorney filed a motion regarding Durchslag's medical needs, and the MCC agreed to transport Durchslag out of the facility for medical treatment. On February 18, 2013, Durchslag was returned to Thorek hospital, where the same ophthalmologist examined Durchslag and noted that his prior order had not been followed. Durchslag was subsequently allowed to wear dark tinted glasses at the MCC, although he has made numerous complaints to MCC staff regarding the fit and effectiveness of the provided glasses. On May 8 and again on June 11, 2013, Durchslag was examined at Northwestern. At that time, Durchslag's vision had deteriorated such that he could no longer read. On December 4, 2013, Durchslag was recognized as "an individual with a disability" by the State of Illinois and began receiving counseling and guidance regarding his vision loss.

On December 5, 2013, Durchslag was examined at Northwestern and instructed to follow up with a specific neuro-ophthalmologist at Northwestern in one week. Between December 5, 2013 and October 22, 2015, Durchslag was not seen by any ophthalmologist or neuro-ophthalmologist, including the one to which he had been previously referred. On October 22, 2015, he was seen by various doctors at the University of Illinois Hospital and Health Sciences System in Chicago ("UIC"), where he was informed that his vision had worsened. He was seen at UIC again on November 11, 2015, at which time it was determined that he was completely blind and unlikely to recover any of his vision. Lab results indicated that Durchslag was positive for multiple anti-retinal autoantibodies, signaling the presence of autoimmune retinopathy and cancer-associated

2

retinopathy. Durchslag was re-assessed at UIC on February 16, 2016, at which time additional testing was recommended. That testing did not occur prior to Durchslag's release on July 11, 2016.

On December 28, 2015, Durchslag presented his administrative claim to the Bureau of Prisons. Following the denial of that claim Durchslag brought the present action.

**Legal Standard**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint, not the merits of the allegations. The allegations must contain sufficient factual material to raise a plausible right to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569 n.14, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Although Rule 8 does not require a plaintiff to plead particularized facts, the complaint must allege factual "allegations that raise a right to relief above the speculative level." *Arnett v. Webster*, 658 F.3d 742, 751–52 (7th Cir. 2011). Put differently, Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), *see also* Fed. R. Civ. P. 8(a). When ruling on a motion to dismiss, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Park v. Ind. Univ. Sch. of Dentistry*, 692 F.3d 828, 830 (7th Cir. 2012).

**Discussion**

The United States contends that Durchslag's Federal Tort Claims Act (FTCA) claim is untimely. The FTCA requires that a plaintiff file an administrative claim with the appropriate agency before filing suit in federal court. 28 U.S.C. § 2675(a). A tort claim against the United States must be presented to the administrative agency within two years "after such claim accrues" or it will be "forever barred." 28 U.S.C. § 2401(b). In a medical negligence case, a plaintiff's claim accrues once

the plaintiff knows or should have known that he has an injury and who caused that injury. *United States v. Kubrick*, 444 U.S. 111, 121–123, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979).

Here, it is undisputed that Durchslag filed his administrative claim with the Bureau of Prisons on December 28, 2015. Thus, Durchslag's claim is time barred if it accrued any earlier than December 28, 2013. Here, the government contends that Durchslag was aware of his vision loss as early as December 10, 2012 or, if not then, during the course of his medical appointments prior to December 4, 2013. If nothing else, the government contends, Durchslag was aware of his injury by December 4, 2013, when he was declared legally disabled due to his vision loss.

Durchslag, in response, argues that it was not until November 2015 that he learned that he may have cancer-associated retinopathy, a potential cause of his lack of visual function. This, Durchslag contends, is when he discovered that the defendant's failure to follow up on his testing might have led to missed opportunities for treatment for his vision loss and his complete and permanent blindness.

As a general matter, this Court agrees with the government that claims arising from its conduct prior to December 4, 2013 accrued, at latest, on that same date. At that time, Durchslag received a clear indication that he had been injured—the declaration of his disability—and he knew or should have known that the government's failures to timely provide treatment or to comply with doctors' orders were to blame. Durchslag's claims may not be completely time-barred, however. Durschlag has alleged that on December 5, 2013 he was ordered to follow up with a neuro-ophthalmologist, and that this did not happen. He has also alleged that his condition subsequently worsened until November 11, 2015, at which time he was informed that he was completely blind and unlikely to recover any of his vision. A claim arising from the MCC's failure to comply with the doctor's order of December 5, 2013 therefore would not automatically be time barred, so long as the

4

facts demonstrated that the injury accrued after December 28, 2013. Here, however, Durchslag has not alleged any such injury with the requisite specificity, and his claim therefore must be denied.

The government alternatively contends that Durchslag's complaint should be dismissed because Durchslag failed to include the physician's certificate of merit and report required by 735 ILCS § 5/2-622. Section 2-622 applies to any action seeking damages for injuries by reason of medical, hospital, or healing art malpractice. Thus, section 2-622 applies to claims that nurses were negligent in failing to provide medical care, but does not apply to claims that non-medial defendants were negligent in failing to provide medical care. *See Warren ex rel. Warren v. Dart*, No. 09-cv-3512, 2010 WL 3883923, at *11–12 (N.D. Ill. Nov. 24, 2010) (Dow, J.). Although it is true that providers of medical care are held to the same standard of care as non-providers of medical care in the performance of duties unrelated to their medical expertise, the alleged wrongdoing here—ignoring doctor's orders and failing to adequately treat Durchslag's medical condition—falls squarely within the medical expertise of a medical provider.

Durchslag's complaint is somewhat ambiguous about whether it is premised on the negligence of medical staff, non-medical staff, or some combination thereof. This Court, however, notes that the only individuals identified with specificity within the complaint are medical staff, and that at least some of the negligent acts or omissions alleged in the complaint could only have been performed by medical staff (i.e. failing to supervise and monitor plaintiff's medical condition). This Court accordingly holds that Durchslag was obligated to file a certificate of merit under section 2-622, and that his failure to do so provides an independent basis for dismissing his complaint.

**Conclusion**

For the foregoing reasons, Durchslag's First Amended Complaint is dismissed without prejudice with respect to the United States of America. Durchslag is granted leave to file an

amended complaint within forty-five (45) days of the entry of this order. Failure to do so will result in the United States' dismissal from this case with prejudice.

SO ORDERED.

_____
Sharon Johnson Coleman
United States District Court Judge

DATED: June 5, 2017